GEORGE W. HERRICK *vs*. ANDREW J. JOHNSON.

An indenture, purporting to be tripartite, contained the following recital, to wit: That D., of South America, was building a steamboat at Boston, and fitting her for sea, to be used in navigating the waters of South America; that he had agreed with H. to employ him to go out in said boat, acting as chief engineer thereof, and taking charge of her engine and machinery, upon the salary of $100 per month, payable monthly, one half in Boston, to H.'s order, and the other half to his order, in South America, or wherever he might be in the employment of D.; that J. had agreed to become responsible for the payment of one half of said salary in Boston, for the time during which H. should be in the service of D.; and that H. had agreed to enter into the service of D. upon the terms aforesaid: The several covenants in the indenture were conformable to the agreements which the recital stated to have been made by H., J. and D. severally: H. and J. executed the indenture, but D. did not execute it: H. went into the service of D., as chief engineer of the boat, and drew, on the back of that part of the indenture held by him, an order, in favor of his wife, on J., for that part of his wages which was payable at Boston: J. made four payments on the order, and refused to make any further payment: H. brought an action of debt against J. to recover the remainder of said monthly wages, and J. defended the action on the ground that D. had not executed the indenture. *Held*, that the recital, in the indenture, of the agreement between D. and H., if it did not estop J. to deny it, must, in this action, be taken to be true, in the absence of evidence to the contrary; and that H. was entitled to recover SHAW, C. J. dissenting.

THIS was an action of debt, and the declaration was as follows: "That the said defendant, at Boston, by his indenture, signed, sealed and duly executed and delivered, and dated on the 1st day of December 1842, for and in consideration that the plaintiff would then and there enter into the service of one Danin, in the capacity of an engineer, and would take

care of a certain steamboat, called the Danin, and her machinery, as fully set forth in and by the aforesaid indenture, he the said defendant then and there promised and agreed to be responsible for one half of the salary payable by him the said Danin to the plaintiff, to wit, the sum of one hundred dollars per month, to wit, the sum of fifty dollars; the aforesaid sum of fifty dollars being payable monthly at said Boston ; and the plaintiff avers that he there afterwards, on the same day, at said Boston, entered into the employment and service of the said Danin, as engineer of the said steamboat Danin, to wit, on the 1st day of December 1842, as more fully set forth in and by said indenture, and continued faithfully to discharge his duties as engineer on board said Danin, and in care of her machinery, until the 8th day of June 1843, when, at Boston, to wit, on said 8th day of June, there was due and owing from said defendant, at said Boston, for six months and eight days' service as aforesaid, at the rate aforesaid, the sum of three hundred and nine dollars and fifty cents. Yet the said defendant, though often requested, has never paid the same, but neglects and refuses, and still detains the same."

The defendant pleaded *nil debet,* and filed a specification of defence, stating that he executed the indenture declared on, as surety ; that it was to have been executed by Joaquim F. Danin, as principal, but that he had never executed it.

At the trial in the court of common pleas, *Williams,* C. J ruled that the defendant was liable, although said indenture was not signed or executed by said Danin. A verdict was taken for the plaintiff under this ruling, and the defendant alleged exceptions.*

---

* The indenture and the indorsements thereon (which were made part of the case) were as follows :

" This indenture, made this first day of December in the year of our Lord one thousand eight hundred and forty two, by and between Joaquim F. Danin, of Para, in the empire of Brazil, in South America, of the first part, Andrew J. Johnson, of the city of Boston in the county of Suffolk and State of Massachusetts, merchant, of the second part, and George W. Herrick, of said city of Boston, engineer, of the third part, witnesseth : That whereas the said party of the first part is now building and fitting for sea, at the port of said city of Boston,

This case was argued at the last March term.

*D. A. Simmons,* for the defendant.

*Park,* for the plaintiff.

The opinion of a majority of the court was delivered by

WILDE, J. This is an action of debt, founded on an indenture tripartite, duly executed by the plaintiff and the defendant, but not executed by Joaquim F. Danin, the other party to the indenture; and the question is, whether, by his omission to execute the indenture, the defendant is discharged from the obligation of his covenant with the plaintiff.

To determine this question, we are first to consider the facts and circumstances upon which the defendant's alleged liability depends. These appear by the recital in the preamble of the indenture. It is there stated that at the time when the indenture was dated, the said Danin was building and fitting for sea, at the port of Boston, a steamboat to be employed in navigating the waters of South America; and that

---

a steamboat called the Danin, which he intends to use in navigating the waters of South America, and has agreed with said party of the third part to employ him to go out in said boat, acting as chief engineer thereof, and taking charge of her engine and machinery, upon the salary of one hundred dollars per month, payable monthly, one half thereof to his order in said city of Boston, and the other half to his order in South America or wherever said party of the third part may be in the employment of said party of the first part, and said party of the first part has also agreed to pay all the expenses which the said party of the third part shall necessarily incur while in his employment : And whereas the said party of the second part has agreed to become responsible for the payment of said one half of said salary, payable in Boston, for the period of time which the said party of the third part shall be in the service of said party of the first part; and whereas the said party of the third part has agreed to enter into the service of said party of the first part, upon the terms aforesaid : Now, in consideration of the premises, the said party of the first part, hereby obligates himself to employ said party of the third part as chief engineer on board of his said boat, the Danin, and to pay him therefor the sum of one hundred dollars per month, commencing with the date of this indenture, and continuing said salary until the time of his arrival in Boston, after the termination of his services, provided he shall go directly home, and to pay the same monthly, one half to his order, in Boston, and the other half to his order in South America or wherever he may be in the employment of said party of the first part, and also to pay all expenses which the said party of the third part will necessarily incur, during the period of his service. And the said party of

he had agreed with the plaintiff to employ him to go out in said boat, acting as chief engineer, and taking charge of the engine and machinery of the boat, for which the plaintiff was to receive a salary of $100 per month, payable monthly, one half to his order in the city of Boston, and the other to his order in South America, or wherever he might be in said Danin's employment. It also appears that the defendant had thereupon agreed to become responsible for the payment of the said one half of said salary payable in Boston, for the period of time while the plaintiff should be in the service of the said Danin. It appears also that the plaintiff had agreed to enter into the said Danin's service upon the terms aforesaid. It was in consideration and in pursuance of these agreements, that the indenture was prepared and executed by the plaintiff and the defendant, and thereby the defendant covenanted and agreed to become responsible to pay or see paid to the plaintiff, one half of his salary, payable in Boston, according to his previous verbal agreement.

---

the third part hereby agrees and obligates himself to enter into the service of the party of the first part, upon the terms aforesaid, and to go out to Para in South America, to act as chief engineer of said boat, the Danin, superintending her engine and machinery, and getting her in order to run in the waters of Brazil, and to continue in the employment of said Danin until after he has given        months' notice of his intention of terminating his services. And the said party of the second part hereby agrees and becomes responsible to pay, or see paid, to said party of the third part, the said one half of his salary, payable in Boston. In testimony whereof the parties have hereunto set their hands and seals the day and year first above written.        (Seal.)

Andrew J. Johnson, (Seal.)

George W. Herrick, (Seal.)"

On the back of this indenture were the following order and receipts :

" Mr. Andrew J. Johnson.   Dear Sir : Please to pay Sarah Ann Herrick, or bearer, the amount within written, monthly.        George W. Herrick.

" Boston, January 10th.   Received of Mr. A. J. Johnson twenty five dollars on account of the within order.        ·        George Bowers.

" February 27th 1843.   Received t venty five dollars on account of the with in order.        George Bowers.

" March 23d 1843.   Received twenty five dollars on account of the within agreement.        George Bowers.

" April 14th 1843.   Received twenty five dollars on account of the within agreement.        George Bowers.'

2 *

These agreements, as stated in the recital, are admitted by the defendant by his execution of the indenture; and the verity of the recital is confirmed by the strongest presump-tions arising from the circumstances of the case. It is impos-sible to suppose that this indenture would have been reduced to writing, and signed by two of the parties, unless the terms had been before agreed upon and settled; or that the defend-ant would have undertaken to pay a part of the plaintiff's salary for services to be rendered to Danin, unless it was done at his request. It is sufficient, however, that the recital is *primâ facie* evidence of the facts therein stated. It is not questioned that the plaintiff, in pursuance of his agreement, entered into Danin's service, which must have been proved at the trial, and might be inferred by the defendant's payment of a part of the stipulated salary, by which also he confirmed the obligation of his covenant.

Keeping in view these facts, the justice of the plaintiff's claim is apparent, which, in the opinion of a majority of the court, we are not restrained from administering, by any sub-stantial objection or any technicality of law.

The principal, and indeed the only substantial objection, as we think, which has been urged against the plaintiff's claim, is, that as Danin did not execute the indenture, he was not bound to repay the defendant the money paid on his account. If this objection were well founded, it certainly would be entitled to great weight. But this is by no means the case. It is true that Danin is not bound by the indenture; but he is bound by his previous agreement, and the terms of that agreement and the covenant in the indenture are identical. It is immaterial whether he executed the indenture or not; for, if the defendant became responsible to the plaintiff at the request of Danin, there can be no doubt that the defendant would have a clear right to recover over against him, the amount he should pay on his account and for his use and benefit. In this point of view, it is quite immaterial in what form the defendant became bound to the plaintiff; whether by his verbal promise, or a separate written promise, or by this

indenture, which is said to be incomplete. It is, however complete between the plaintiff and the defendant, and the plaintiff fulfilled his agreement with Danin, undoubtedly on the faith of the defendant's covenant.

Another objection to the plaintiff's claim is founded on a principle of law which is not disputed; the only question is, whether it applies to the present case. The rule of law is, that if a person agrees to become surety for another, he thereby incurs no obligation as surety, if no valid claim ever arises against the person for whom he became bound. So if the principal debtor be discharged from his liability, it will operate as a discharge of the surety. Chit. Con. (5th Amer. ed.) 499. But Chitty remarks, and he is supported by the authorities, that the rule that a party cannot be liable on a contract of guaranty, unless the principal has incurred a legal responsibility, is true, in some instances, in form of words rather than in substance; as where a person becomes surety for a minor or feme covert, or contracts, without authority, as agent for another. In such cases, he may be viewed as the principal and absolute debtor. And so, we think, the defendant may be viewed, under the circumstances appearing in the present case. It seems to us manifest that he was so regarded by the plaintiff, as to that part of his salary which was payable in Boston. And it is equally clear that the defendant must have intended thus to become responsible; for he paid to the plaintiff's order four several sums of money, in each of the four following months next subsequent to the date of the indenture, and thus repeatedly admitted his responsibility according to the words and meaning of his covenant. It never could have been intended by the parties, that Danin should pay that part of the plaintiff's salary which was payable in Boston, and which the defendant had agreed to pay unconditionally. Danin and the plaintiff were in South America, or on their way there, when these monthly payments became due, and the understanding clearly was, that these payments were to be made by the defendant. The plaintiff drew his order, in favor of his wife, upon the defendant, and it was for her support, no doubt, that

the arrangement, as stated in the recital, was made. Relying upon the defendant's agreement, the plaintiff entered into the service of Danin, and thereupon the defendant became responsible as a principal debtor to the plaintiff rather than in the relation of a surety of Danin.

If a person agrees with another to pay for services to be rendered, or for goods to be sold to a third person, and the services are thereupon performed, or the goods sold, the person making the promise is the principal debtor, and not the surety of the third person. Such a verbal promise is not within the statute of frauds, as a promise to pay the debt of the third party. And we cannot but consider the defendant as having incurred a similar obligation. The plaintiff, we think, relied, and had a right to rely, on the defendant, as his principal debtor, for that part of his salary which was payable in Boston.

But if this were otherwise, and the defendant is to be regarded as a surety, still the principle of law, on which his counsel relies, is not applicable. As before remarked, Danin, although not bound by the indenture, was bound by his previous agreement as stated in the recital; and if it was also agreed that the verbal agreement should be reduced to writing, in the form of an indenture, as it afterwards was done, (which may reasonably be presumed,) still, if Danin omitted to sign it, and took the plaintiff into his service, and the plaintiff performed his part of the agreement, the parties must have understood that the services were performed in reliance upon the verbal agreement. There is no evidence that any new agreement was made, or that Danin refused to execute the indenture ; and if he did not refuse before the plaintiff performed the stipulated services, it would be too late for him to object to the terms and obligation of the verbal agreement, after the services had been performed.

But if no express agreement had been made between the plaintiff and Danin, he nevertheless would become indebted to the plaintiff, on the performance of his services; and the rule of law on which the defendant's counsel relies would not

be applicable. For it could not be maintained that Danin was not indebted to the plaintiff; and if it should be objected, that the amount of his indebtedness, in such a case, would be uncertain, the answer is, that the amount, for which the defendant was liable as surety, was made certain by his covenant. He was to pay $50 per month for the period of time during which the plaintiff should be in the service of Danin; and whether that would be one half of what Danin would be indebted for the plaintiff's services does not seem to be material.

We do not, however, decide the case upon this point; for we are satisfied that a binding verbal agreement between the plaintiff and Danin is well proved by the recital. The rules of law on this point are well settled, and are clearly and correctly stated by Professor Greenleaf, in his valuable Treatise on the Law of Evidence. The general rule is, that recitals in deeds are binding on all parties thereto, which operate as estoppels or conclusive evidence of the facts recited. 1 Greenl. on Ev. § 23. But this rule as to the conclusive effect of recitals in deeds is restricted to the recital of things in particular, as being in existence at the time of the execution of the deed; and does not extend to the mention of things in general terms. 1 Greenl. on Ev. § 26. Yelv. (Amer. ed.) 227, *note.* Whether the recital of the payment of the consideration money, in a deed of conveyance, falls within the rule by which the party is estopped to deny it, or is only *primâ facie* evidence of the fact, and is therefore open to opposing proof, is a point not clearly settled. In England, the recital seems to be regarded as conclusive evidence of payment; and the weight of American authority is in favor of treating such a recital as only *primâ facie* evidence of the payment; as was decided in *Wilkinson* v. *Scott*, 17 Mass. 249, and various other cases cited by Professor Greenleaf. In the present case, it is immaterial whether the recital is conclusive or only *primâ facie* evidence of the facts stated. This rule of law, as to estoppel by recitals, is not restricted to deeds of conveyance of real estate, nor to other deeds. In *Denn* v. *Cornell*, 3 Johns. Cas. 174.

it was decided that the recital in a will, that the testator had conveyed an estate to one of his sons, was an estoppel of the heir to deny that fact. In the case of *Shelley* v. *Wright*, Willes, 9, the question of estoppel by a recital in a bond was fully discussed, and the authorities referred to by Chief Justice Willes, in delivering the opinion of the court. It was recited in the condition of the bond, that the obligor had received divers sums of money for the obligee, which he had not brought to account, but he acknowledged that a balance was due to the obligee, and it was holden that the obligor was estopped to say that he had not received any money for the use of the obligee. " There are some general sayings in the books," the chief justice remarks, " that no one shall be estopped by a recital; as in Co. Lit. 352 *b;* but the reason there given is, ' because it is no direct affirmation.' And in 1 Rol. Ab. 870 and 871, there are some few cases in which it was holden that a man shall not be estopped by a recital; but there are more cases in which it was held that he may be estopped." And he alludes to the distinction stated by Professor Greenleaf, and which is laid down in 1 Rol. Ab. 872, that a person shall not be estopped by a general recital, but shall by a recital of a particular thing. And Chief Justice Willes also remarks, that the reason which is laid down in Co. Lit., why a recital ought not to estop, plainly did not hold in the case to be decided by him; for in that case there was a direct affirmation of the matters which were insisted on as an estoppel in the replication. And so, we think, there is in the present case. But the question here is, not whether the recital in the indenture shall operate as an estoppel, but whether it is competent evidence of the facts stated in the recital; and that it is competent evidence has never been questioned, and cannot be doubted.

According to these rules of law, therefore, the recital must be taken to be true; there being no evidence to oppose it. We must conclude, then, that the terms of the agreement were concluded and settled before the indenture was written. Those terms are recited with great particularity, and are in

conformity to the defendant's covenant. He was to become responsible to the plaintiff for one half of his salary, payable in Boston; and so was his covenant. The parties intended, no doubt, to reduce their agreements to writing, as it was done, and that all the parties should execute the indenture. It was, for some reason, omitted to be executed by Danin; but this seems to us to be no reason why the defendant should be discharged from his liability. The indenture was intended to be of three parts, but it is in fact of two parts; and between the plaintiff and the defendant the agreement is complete, and the omission of Danin to fulfil the agreement on his part is not material in the present action. There was no covenant on the part of Danin to indemnify the defendant for the money to be paid by him; and if Danin had executed the indenture, the defendant's remedy would be, as it is now, on an implied promise. It is impossible to doubt that the defendant became responsible to the plaintiff at the request of Danin; and if so, then clearly he is liable. The plaintiff undoubtedly performed the services mentioned in the indenture, in full reliance on the defendant's agreement to provide for his family here; and whether the defendant is to be regarded as surety of Danin, or as a substitute for him as to part of the salary payable in Boston, he is equally liable as a debtor to the plaintiff, according to his covenant. If he is to be regarded as the surety of Danin, and not as a principal debtor, we are not aware of any rule of law, or any authority, by which he is discharged from the obligation of his contract. There is a *dictum* in the case of *Bean* v. *Parker*, 17 Mass. 605, which may seem to be in opposition to the doctrine now laid down; but the case was not decided upon the principle there stated. The remark is, that " a bond or other instrument, intended to be executed by several, is not good against one alone; and a declaration which should set forth a bond purporting to be made by *A*. as principal, and by B. & C. as his sureties, would not be supported by producing in evidence a bond made by the sureties only." This remark is generally correct; and the reason of the doctrine is, that the sureties might be injured, if they should be held responsible without having any remedy

over against the principal. So if a bond, purporting to be made or intended to be made by a principal and two sureties, is executed by the principal and one surety only, such surety would not be liable on the bond, because he would not have any remedy against the other surety. But this rule of law is not applicable to the present case, by reason of the recital ; as before remarked. As to the decision of the case of *Bean* v. *Parker,* it certainly cannot avail the defendant in this action. That was an action against the sureties upon a bail bond, which had not been executed by the principal ; and it was held that the sureties were not liable. It was admitted that by the law in England the sureties would be bound. Chief Baron Comyns says the principal need not be bound. Com. Dig. Bail, G. 2. 1 Salk. 3. 7 Mod. 38. So the sheriff, in England, may put in bail for the principal, without his consent. *Pariente* v. *Plumbtree,* 2 Bos. & Pul. 35. However this may be, the law in respect to bail is undoubtedly different here, and so it was decided in the case referred to ; and the ground of the decision, as laid down by Parker, C. J. was, that unless the principal becomes a party to the bail bond, the remedy of the sureties against the principal would wholly fail or be much embarrassed. " Suppose," says the chief justice, "they wish to arrest the principal in some distant place, or in some other State ; what evidence would they carry with them that they were his bail ? There is nothing to estop him from denying the fact, nor any proof that it was true." None of these reasons are applicable to the present case, if the recital be true ; for if there was a verbal agreement corresponding with the agreement set out in the indenture, in pursuance of which the defendant became bound, he certainly would have his remedy over against Danin, the principal. That the defendant is bound by the recital is fully supported by the doctrine as laid down by Parker, C. J. in the case cited. " If a bail bond," he says, " had been given in common and proper form, it would admit, as a fact, the arrest of the principal ; and the sureties would not be allowed to deny the fact, against their own admissions under their seals."

We must take it, therefore, to be true. that the defendant

Herrick *v.* Johnson.

became bound to the plaintiff, in pursuance of an agreement to that effect between him and Danin, and consequently that the defendant cannot be prejudiced by the omission of Danin to execute the indenture.

A majority of the court, therefore, are of opinion that the ruling at the trial was correct, and that the plaintiff is well entitled to judgment.

SHAW, C. J. Regretting that I have not been able to concur with my brethren, in their opinion in the present case, I have thought it advisable, under the circumstances, to state some of the grounds on which I have formed my own. The case comes before the court by a bill of exceptions, and we can know nothing of the case beyond what that bill discloses, and the instrument to which it refers.

The action is debt, and to sustain it, the plaintiff relies solely upon an instrument purporting, on the face of it, to be an indenture of three parts, made by Joaquim F. Danin, of Para, in the kingdom of Brazil, of the first part; the plaintiff, of the second part; and the defendant, of the third part. This indenture appears, upon its production, to have been executed by the second and third parties, but not by the first. No facts appear, to show the circumstances under which it was executed or delivered ; nor is there any evidence of its delivery, except that which results from its being found in the possession of the plaintiff. In general, it is true that the possession of a deed by a party in whose favor stipulations are contained in it, is evidence of a delivery and acceptance. *Dedham Bank* v. *Chickering,* 3 Pick. 335. But this rule obviously applies most directly to the case of a deed poll, or other instrument of which the execution is complete. The same reason hardly applies to the case of an indenture purporting to be made between several parties, executed by one and handed over to another or a third person. The inference from such act, in the absence of all other evidence, would rather seem to be, that it was so executed and handed over provisionally, to be executed by the other parties, and not to enure as an absolute delivery, until so executed.

But without laying much stress upon this objection, it appears to me that the nature and terms of the instrument, and the objects and purposes intended by it, plainly indicate that the obligation of the plaintiff presupposes the existence of the contract between both the other parties, and is founded on that assumption; and that, until it was executed by both of them, it was inchoate, incomplete, and created no binding obligation on the defendant. The specific ground is, that, taking the whole tenor of the instrument, it purported to contain a contract between Danin and Herrick, that the former would employ the latter to go out to Brazil, and pay him for his services at a stipulated rate per month, part to himself abroad and part in Boston; on the part of the latter, that he would perform the services upon the terms stipulated; and on the part of the defendant, that he would pay that part of the stipulated compensation which was to be paid in Boston. It was, in effect, a stipulation that Danin should perform a certain part of his contract. What was the contract thus guarantied? It seems to me that it was the contract, made in the same instrument, between Danin and Herrick. It presupposes the execution of that contract, and it is that which constitutes the subject matter of the contract between these parties. It is collateral, and implies a principal contract, constituted by the same instrument. If, therefore, the principal contract fails to be completed, the incidental and collateral one fails with it. It is in nature of a guaranty, and there must be a contract to be guarantied. It is not necessary to this conclusion to maintain that, in an instrument between two or more parties or persons, it is necessary, in order to be binding on any, that all should execute it. It must depend upon the nature and terms of the instrument.

A deed may undoubtedly be so framed as to bind those who execute it, though not executed by all. Such is a composition deed executed by creditors, or a letter of license given by creditors to a debtor, and many others. But suppose an indenture tripartite, being an assignment by a debtor to trustees, for the benefit of his creditors. Here are three

parties; 1st, the debtor, who conveys property; 2d, the trustee, who receives and accepts it on the trusts expressed; and 3d, the creditors, who assent to it, and release their debts. It is immaterial who executes first. The usual course is, to deliver it to some one, either a party or not, to procure it to be executed. The assignee and many creditors execute it; but the debtor declines or neglects to execute, or dies before it can be done; no property passes, which is the basis of the whole proceeding, and without which there is no consideration for the admissions and stipulations of the other parties, or for the express release of their debts by the creditors. Would such other parties be either estopped by the recital, or barred by their releases, or bound by their executory stipulations? Or should the assignee refuse to accept the assignment, or die before executing the instrument, would the release be binding on the creditors, although executed by them, and in terms a present and absolute release? It appears to me not; because the act of each would be in its nature provisional, and the instrument, if not executed by other necessary parties, would be inchoate and incomplete.

This conclusion seems to me to be strongly supported by the case of *Bean* v. *Parker*, 17 Mass. 591, in which it was held that a bail bond, not executed by the debtor, who, on its face, purported to be principal, was not binding on the sureties. That case is very long, and it is difficult, without too large an extract, to cite all that bears on the case at bar, though the whole reasoning, at pages 604–606, is very instructive, and, as I think, quite applicable to the present case. The court say, " we think it essential to a bail bond, that the party arrested should be a principal; it is recited that he is, and the instrument is incomplete and void without his signature. The remedy of the sureties against the principal would wholly fail or be much embarrassed, if such an instrument as this should be held binding."

Some cases have been cited as having a contrary bearing; but in my opinion they are all distinguishable from the present.

*Cutter* v. *Whittemore,* 10 Mass. 442, was an indenture, purporting to be made jointly and severally, by three on the one side, and one on the other, by which a demand by the one against the three for damage done by flowing his land, was submitted to arbitration; and it was executed by two of the three. The two appeared before the arbitrators without objection, and submitted the demand made against them, and the arbitrators made an award. On suit brought against the two, an objection was taken that it purported to be made by three, and that two only signed; but it was answered and resolved, that the two were bound; 1st, because they had executed it, and bound themselves to the other party jointly and severally; 2d, because it was for a demand for which each was liable in full; 3d, because they might well bind themselves to perform an award against themselves and another, and under the circumstances had done so; and 4th, by going before the arbitrators, knowing that two only of their number had signed the indenture, they had waived their objection, and acted upon the instrument as the obligation of two. I think it does not contravene the position which I take.

*Adams* v. *Bean,* 12 Mass. 137. On a lease purporting to be made to two lessees, but executed by one only, the defendant indorsed a guaranty, on its being presented to him by the one who had executed it. The defendant at first declined signing it, but upon a second application, and being pressed by the other lessee, the defendant signed the promise of guaranty, but stated at the same time to the other lessee that the instrument would not be binding without his signature. The lease was immediately delivered to the lessor, without any information to him of the defendant's conversation, and the lessees immediately entered upon and occupied the leased premises. It was left to the jury as a question of fact upon the evidence, whether, at the time the defendant signed the promise, it was expected and intended that it should be delivered over to the plaintiff; and they were instructed, that if it was so, it must bind the guarantor, whether he thought it

void or not. This instruction was confirmed by the court, and the effect of the decision therefore was, that the guarantor was bound by a promise indorsed on the lease as it was, if he intended to guaranty the performance of the contract, whether executed by the other lessee or not; and I cannot perceive that it has any bearing on the present case.

In *Warring* v. *Williams*, 8 Pick. 322, an instrument not under seal was signed by three; afterwards, with the consent of two, the words "jointly and severally" were interlined, the instrument sealed, and again delivered by the two; and it was held to be their deed and binding on them.

In *Ward* v. *Ward*, 15 Pick. 511, the question was upon an instrument purporting in the caption to be articles between two persons on the one part, and the other heirs of E. W. on the other part. In another clause it was thus expressed: "And the said heirs, who shall hereafter subscribe their names, on their part do covenant," &c. The stipulations were several in their nature. The court construed it to be several, and binding on those who subscribed.

But it is then urged and relied upon, that the instrument now in question recites a previous agreement between the three parties, and that this recital is sufficient evidence of such agreement to bind these parties. 1 Greenl. on Ev. § 23. That recitals in a deed are good evidence, and will bind parties and privies by estoppel and otherwise, is readily admitted. But the rule presupposes and assumes that such recital is contained in a good, complete and executed deed. Almost every deed is made up partly of recitals and partly of executory stipulations. But, until a deed is duly executed, a party is no more bound or affected by the recitals, than by the covenants or executory stipulations. If it is put on the ground that this recital operates as an admission of the existence of some separate, anterior parol agreement, existing independently of the instrument itself, the evidence fails to establish it. In that case, the indenture would have been a contract between the two, reciting the agreement between the three, and designed to carry it into effect. Here it purports to be the

4 *

contract between the three parties, reciting the agreement and carrying it into effect, by the terms of the instrument itself. There is, undoubtedly, some previous negotiation and concurrence of minds, in all such cases; but the rule is, that when the contract is reduced to writing, all such previous provisions are merged in the written contract. Here the agreement recited was the agreement between the three parties. The recital purported to be the act of the three parties, made in an instrument designed and proposed to be executed by them; and if the instrument had been so executed, it would have contained, not only the recital, but the conclusive and only authoritative exposition of that agreement. All supposed anterior parol agreements would have been merged in it. It seems to me manifest, that the fact of its not having been executed by one of the intended parties cannot convert it into evidence of such anterior parol agreement. On the contrary, the natural inference would seem to be, that not being so executed, it was incomplete, and did not truly express the admissions and the contract as understood and intended by the parties to be concluded by this indenture.

There is one other aspect, in which it appears to me that this subject may be considered, to show that the instrument was not complete until executed by Danin; and that is, the defendant's remedy for whatever he might pay under it. I cannot escape the conclusion, drawn from the instrument itself, that the binding and executed contract between Danin and Herrick, the one to employ on certain terms, and the other to serve, and the duty thereupon to arise on the former to pay the stipulated compensation, was the true and real consideration upon which was to be based the executory stipulation of the defendant to guaranty the payment to the plaintiff of all that part of his wages which Danin stipulated should be paid in Boston. Until such contract was concluded and executed. there was no subject on which the defendant's obligation of guaranty could operate. I do not use the term "consideration" technically, because no consideration is necessary to give

effect to a deed otherwise valid; but by "consideration" I mean inducement, moving cause, basis or ground of contract. As the case stands, there is no evidence that Danin employed the plaintiff as an engineer, or, if he did, that it was not upon a different contract from that expressed in this indenture. It may be conjectured from the fact that some payments of money are indorsed on the instrument as paid by the defendant, that the plaintiff performed some service for Danin, upon some contract, on board of the steamboat in question; but it does not appear upon what terms. If, therefore, the defendant were to pay the plaintiff his demand, it would not be a payment of his own debt, but, as it appears from the instrument itself, a payment for Danin; and yet, as against Danin there is nothing to show that it is paid for his use, or at his request; and the plaintiff has no remedy over against Danin. Had Danin executed and become party to this instrument, then it would appear that all money paid by the plaintiff would be paid pursuant to his obligation of suretyship, undertaken at Danin's request, manifested by his being a party; and this would be a request in law, so that the defendant would have a plain remedy against Danin, for money paid to his use, and at his instance and request. The instrument, thus executed, would have borne upon its face conclusive evidence of the relation of surety and principal between the defendant and Danin, binding on the latter, as of the obligation of the defendant to the plaintiff, and thus afford the defendant a plain and perfect remedy for all money which he should pay under it. But as it is, the defendant has no remedy over against Danin, for money which he might have voluntarily paid, or which he may be compelled to pay under the judgment in this case.

If it be said that it would be competent for the defendant to prove, by other evidence, that Danin had agreed to employ the plaintiff, and had requested the defendant to pay that part of the plaintiff's wages which was payable in Boston, the answer is, that it does not appear that any such facts exist, and it cannot be presumed without proof. On the

contrary, it is rather to be presumed that these parties both expected that the contract was to be executed by the principal party to it, and then the instrument would have borne upon it all the evidence necessary to express and secure the rights of the parties.   This view strengthens the conviction in my mind, that this was an inchoate and unfinished paper, never so completed as to give it the effect of a contract between these parties, and therefore that this action cannot be maintained.

It was hinted, at the close of the argument, that the contract, as it exists, may have been ratified by certain payments. But this point, I think, is not open.   It was not taken at the trial, and it depends upon facts not stated in the bill of exceptions.   Such payments may have been made out of Danin's own funds.   But what is quite decisive, the ruling of the learned judge, that the defendant was liable on the instrument as executed, precluded all inquiry into the facts on which the point of ratification depended.   I have not therefore thought it necessary to consider that question.

*Exceptions overruled.*